(No. 16539.—Judgment reversed and award set aside.)
THE WEST SIDE COAL AND MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(NANNIE MAY SHOEMAKER *et al.* Defendants in Error.)

*Opinion filed April 23, 1926.*

1. WORKMEN'S COMPENSATION—*decision of the Industrial Commission may be reversed on evidence.* The Industrial Commission must weigh the evidence in the record and make its findings for the party in whose favor the evidence preponderates; but the commission's findings are entitled to no more weight than those of other administrative bodies, and the decision of the commission will be reversed if manifestly against the weight of the evidence.

2. SAME—*when finding as to cause of death is not sustained by evidence—pre-existing disease.* Where a claim for compensation for an alleged accidental death is based solely on the theory that the employee, who was a blacksmith, suffered a burn on his lip which developed into a cancer, from which he died, a finding that the alleged injury was the cause of the cancer and allowing compensation must be reversed where the weight of the evidence is that the sore on the employee's lip existed prior to the injury and where no claim is made that the injury accelerated such condition.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. LOUIS BERNREUTER, Judge, presiding.

E. M. SPILLER, (ROBERT H. DAVIS, of counsel,) for plaintiff in error.

W. J. MACDONALD, (A. W. KERR, of counsel,) for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This application for compensation was originally filed by Robert Shoemaker against the West Side Coal and Mining Company for an injury occasioned by a hot scale or piece of iron striking him on his lower lip and resulting in a cancer. On a hearing before an arbitrator an award was entered in favor of the applicant. An appeal was perfected to the Industrial Commission, and while the appeal was pending, and before final hearing, the applicant died, and by agreement his widow, Nannie May Shoemaker, and his children, Clyde, Joel, Viola, Ellis, Elizabeth and Maude Shoemaker, were substituted and the cause proceeded to final hearing in their names as petitioners. The commission heard additional evidence and entered an award in favor of the petitioners in the sum of $15 per week for 266⅔ weeks, having found that the injury resulted in death. The circuit court of Randolph county confirmed the award of the commission. This writ of error was allowed to review the record.

The only question in this case is whether or not the evidence sustains the finding of the Industrial Commission that the injury was the cause of the death of Shoemaker. The injured employee, Robert Shoemaker, testified in his own behalf in July, 1920, as follows: He was thirty-five years old. About August 5, 1919, he was employed by the West Side Coal and Mining Company, near Coulterville, as a blacksmith, and had been so working about six

years at sixty-seven cents an hour.   On that day, while so employed, he struck a hot piece of iron and a scale or piece flew from the hot iron and struck him on his lower lip, causing a blister to form.   He reported his injury to the general manager of the mining company and on the next day he was treated by Dr. Hendrickson, the company's doctor.   He did not tell Dr. Hendrickson what caused the blister or sore on his lip.   The doctor treated his lip for about a week and then went on his vacation.   The witness was then treated by Dr. Kimball.   He told Dr. Kimball that he had been injured by a piece of hot iron striking him on his lip and Dr. Kimball treated him for a burn.   His treatment did not seem to help him any and he so told Dr. Kimball. His lip was swollen, pained him and pus was discharged from it.   The place was about the size of a ten-cent piece and has never healed except in a way, leaving a dry scab on it.   He went to C. E. Westaver, of St. Louis, a specialist in cancer, who examined him and treated him September 12, 1919, and he has been treating him since that time. About all of his lower lip is gone and he wears a bandage over his lip and has been wearing it for six weeks.   He is unable to perform any character of work in a coal mine; is too weak to do so.   He did not have any injury to his lip prior to the day he got hurt.   There was nothing the matter with his face prior to the day of his injury.   In September, 1920, he again testified that there was no improvement in his condition.   Sometimes he appears to get a little better and then gets worse.   He then had his lower jaw tied with a bandage and had not been able to do any work since he first testified.   He is a married man, his wife's name being Nannie, and has five children, all under sixteen years of age,—Clyde, Joel, Viola, Ellis and Eliza.

The following witnesses testified for plaintiff in error and to the following facts:

Arthur Goodall:   Is the mine manager for plaintiff in error and has been since February 2, 1919, and was then

acquainted with the deceased, Robert Shoemaker. When the witness began work there he noticed a sore or blister on Shoemaker's lip. He noticed it from time to time and the fact that it did not heal. He also noted that other employees were drinking out of the same bucket as was the deceased. He bought another bucket for the deceased and instructed him to use that one. He talked with the deceased about his lip and told him to keep his fingers away from it; that he had a friend that had gotten a cancer from picking a fever blister. It did not look like a fever blister to the witness. The above facts and happenings all transpired before the alleged injury of August 5, 1919. The sore on Shoemaker's lip was about half as large as a dime and did not heal.

Ruben Guy testified: He worked with the deceased before the alleged injury. He noticed a small sore on the deceased's lower lip and noticed that it did not heal. The deceased said that tobacco juice hurt his lip where it was sore. The witness stated that he learned these facts a year or more before the alleged injury.

A. J. Kennedy testified: He worked at the mine and was acquainted with the deceased in 1918 and saw him frequently around the mine. During that year he saw a small sore on the deceased's lip and noticed that it did not heal.

W. J. Smith testified: He worked at the mine and was acquainted with the deceased. He worked with him in the blacksmith shop before September 16, 1918, and during that time noticed a small sore on his lower lip. The sore remained on his lip from that time until after the deceased quit working in the mine, in July, 1920.

Charles Bickett, a straw-boss at the mine, testified that he was acquainted with the deceased and observed a small sore on his lip six months or more before the alleged injury.

G. A. McNeill testified: He worked for the mining company and was acquainted with the deceased and observed a sore on his lip in 1918 and continued to observe

it after the alleged injury. His attention was particularly called to it because the men around the mine talked about the sore on the deceased's lip.

G. F. Hightower testified that he worked for plaintiff in error and was acquainted with the deceased. He saw the deceased in 1918 use medicine on his lip. He had a conversation with the deceased, who told the witness that he had a small sore on his lip that would not heal.

J. G. Lane, a druggist, testified that he was acquainted with the deceased and had observed a sore on his lip for five years before the time he testified. When he first noticed the sore it later apparently went away but re-appeared in 1917 and remained on his lip since that date. In 1917 he sold the deceased some blood medicine.

William Douglas testified that he was a blacksmith in the same shop with the deceased. He saw a sore on deceased's lip before the time of the alleged injury and observed that the deceased put colored powder on it. He used a different drinking cup from the one used by the deceased because of his sore lip.

The following witnesses testified for the defendants in error and to the following facts:

Dr. G. W. Kimball testified that he was a licensed physician and graduate of National Medical School, of Chicago. He was, and had been, acquainted with Robert Shoemaker for about ten years. He treated him for the sore on his lip on August 13, 1919. The sore was open, like an open cut. Shoemaker had been putting salve on it, and he could not tell exactly what its condition then was. He cleaned the salve off of his lip and treated it with an iodine ointment. Shoemaker came to him again in about two weeks, and when he examined it he advised him to go to a specialist, because he thought it might be a cancer. He could not say whether the sore was of recent origin or not. He saw him again on August 29 and the sore had healed, as he had expected, but the sore exuded and had a proliferation of cells

321—5

that was not there before. He thought it might be a cancer and directed him to a specialist. When he saw him on August 13 the sore did not have any indications of being a cancer. He also stated that a cancer can develop in twenty-four hours, and it was hard to tell how long it would take a non-cancerous sore to develop into a cancer. It might do so in a week or ten days. Shoemaker told him when he first came to see him that he was hammering iron and a spark flew off and hit him on the lip. He had never noticed a sore on Shoemaker's lip prior to August 13, 1919. He saw him frequently on the streets and talked to him, and he was close enough to him for him to observe the sore upon his lip, but he never observed such a sore before the said date. He diagnosed the sore as a burn because Shoemaker told him that it was a burn. He did at that time use a magnifying glass on it, but ordinarily he did not examine a burn with the glass and did not know why he did it at that time but he remembered doing it. He also stated that a cancer might develop from August 5 to the 13th from a burn.

G. E. Purdy, a merchant with whom deceased traded, testified that he had known deceased for several years prior to the alleged injury and had not observed any sore on his lip prior to August 5, 1919.

Andrew Keller, a workman in the same mine, testified that he had known deceased for several years prior to August 5, 1919, and saw him practically every day. He never saw any sore on deceased's lip before that time.

Fox Hughes, a brother-in-law of deceased, testified that he had seen deceased at least every two or three months prior to August 5, 1919, and did not see during that time any sore on his lip.

M. J. Richmond, a real estate and insurance agent, testified that he was well acquainted with deceased and had seen him once or twice a week prior to August 5, 1919, for six years, and had never observed any sore on his lip

prior to that time. He first learned that deceased had a sore or blister on his lip about the middle of August, 1919, and this was the first time that he had ever noticed any sore or blister on deceased's lip.

An employee is entitled, under the statute, to be compensated for every accidental injury suffered in the course of his employment and arising out of it. That is the measure and limit of his right and of the right of his dependents to recover for his death. If the injury is the proximate cause of his death for which compensation is sought, the previous physical condition of the employee is unimportant, and recovery may be had for injury independent of any pre-existing disease. If there is a pre-existing disease and the pre-existing disease is lighted up or accelerated by the injury and death is not occasioned thereby, compensation is recoverable by the employee to the extent and in the proportion in which the pre-existing disease is accelerated or aggravated by the injury. Under these rules the previous condition of the deceased was a material circumstance in ascertaining whether his death resulted from the injury suffered in the course of his employment or from a pre-existing disease. Defendants in error have not presented their case under the theory that a pre-existing condition existed which was aggravated or accelerated by the injury. Their case is based upon the sole theory that the accidental burn of August 5, 1919, originated the cancerous condition of which the employee died. As to whether or not a sore was on deceased's lip previous to the alleged injury is a question upon which the evidence in this record is conflicting. The preponderance of the evidence shows that the deceased did have a sore on his lip for some time before the alleged burn by the hot scale flying on his lip and that it was of a character that would not or did not heal. This court has often announced the rule that the Industrial Commission must weigh the evidence in the record and make its findings for the party in whose favor the evidence pre-

ponderates. (*Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136.) The testimony of the witnesses for plaintiff in error is very positive that the deceased had for some time a sore on his lip that was continuous, and they detail circumstances which impressed this fact on their minds. The evidence in rebuttal of this testimony was mostly of a negative character,—that is, it is to the effect that they were well acquainted with him, had opportunities to observe such a sore but did not observe it.

Since the amendment of the Workmen's Compensation act of 1921 the evidence may be reviewed by the circuit court to determine if the award of the Industrial Commission is manifestly against the weight of the evidence. It has been held by this court that on review the finding of the commission will be given the same weight as is given by this court to other administrative bodies, and that the decision of the Industrial Commission may be reversed if it is manifestly against the weight of the evidence. (*Keller* v. *Industrial Com.* 302 Ill. 610.) The evidence in this record simply shows that the sore on the lip of the deceased developed into a cancer that caused his death. It was incumbent on the defendants in error to show by preponderance of the evidence either that the burn on the deceased's lip directly caused the cancer that caused his death or that it accelerated his death and was a proximate cause of his death. The evidence in the record does not show that the burn was the direct cause of his death and there is no sufficient proof that it was an accelerating and proximate cause of his death. We have often held that a recovery for compensation cannot be based upon conjecture or surmise.

For the foregoing reasons the judgment of the court is reversed and the award is set aside.

*Judgment reversed and award set aside.*