Stewabt, J.
Charles McKee was employed by defendant, was 37 years of age and about five feet 11 inches in height and weighed about 210 pounds.
When he died on September 25,1953, the cause of his death was given in the death certificate as coronary occlusion with antecedent cause as coronary arteriosclerosis with thrombosis.
On September 17, 1953, McKee’s middle left finger came in contact with a drill, resulting in a deep jagged cut but with no tendon injury. The claim in this case is that the injury to his finger accelerated his death. The evidence which it is contended substantiates this claim is that of plaintiff’s expert physician who never saw McKee but who answered a hypothetical question embracing the report of the autopsy on McKee’s body, in which answer he gave as his opinion, based upon reasonable certainty, that the injury suffered by McKee to his finger aggravated his pre-existing heart disease and hastened his death.
The witness .said that there were six indications of a very severe heart disease of McKee; that the anterior descending branch of the left coronary artery was 80 to 90 per cent obstructed by a blood clot caused by hardening of the arteries, which clot in itself is a very severe heart injury; that the left coronary circumflex branch was completely occluded, which indicated a very severe heart damage and pre-existing disease of the heart; that the right coronary artery was heavily diseased *79 with hardening; that the left ventricle was widely dilated; that there was a dilation of the right ventricle; that the left ventricle showed healing of an old infarcted area, indicating that there had been a previous coronary occlusion or heart attack; that the heart had been practically destroyed by hardening of the arteries; that a more damaged heart is difficult to visualize; and that the heart disease had been present for at least three years previous to the injury to the finger, and probably for five years.
The physician gave as his opinion that the injury to the finger hastened McKee’s death, and that McKee might have lived another six months or even two years, or perhaps his death was hastened by even one day or by one week. The witness stated that with a very bad heart, such as McKee had, death is easily precipitated by certain factors, (1) trauma or shock, (2) infection in the body, like pneumonia, influenza, or a common cold, (3) exertion, even though it be slight, (4) disease elsewhere in the body, and (5) emotional upset.
The physician who performed the autopsy on McKee’s body, as well as another expert witness, testified that the cut on McKee’s finger had no connection whatever with his death, so that, as we have said, the sole evidence upon which plaintiff relies is that of her own expert witness.
It appears that McKee had worked, off and on, for the defendant since July 1948, his work being interrupted at times by layoffs. He was injured at defendant’s plant in 1950 and was hospitalized a month, for which injury he was paid through the Industrial Commission. During the times that he was so laid off, he worked part time at filling stations.
After McKee came home on the night of September 17, 1953, with his finger bandaged, he was, according to his wife, restless, sitting on the edge of the bed and rubbing his left arm. The following Friday he worked at defendant’s plant, but there was a layoff after that, and the following Monday he returned to the plant to turn in his badge. Thereafter, he went to one of the filling stations to work but could not do much with his finger bandaged. He did some things around the house and undertook to tack down a stairway carpet but after tacking one step said that he did not feel like doing anything.
We are of the opinion that, although plaintiff’s expert wit *80 ness testified that there was a direct causal relationship between the injury to McKee’s finger and his death, his further testimony shows that such a statement was a mere speculation or guess. The witness said that a slight exertion could cause death of one who had such a heart as McKee had, and there is testimony as to various exertions after his injury and prior to his death. Furthermore, the witness testified that a common cold or any infection, like influenza, frequently causes death of people with badly damaged hearts, and there was testimony that McKee had been treated for influenza, but the export witness’s answer as to the degree of acceleration made such answer most speculative of all, for the reason that the witness said he could not tell whether the acceleration had been two years, six months, a week or a day. Truly analyzed, his answer amounted to a statement that he could not definitely say there was any acceleration due to the injury to the finger.
Plaintiff’s counsel, in argument and with commendable candor, stated that only God can tell the extent of any acceleration or aggravation, and, if only God can tell, how can a jury of twelve human beings do more than speculate upon the question?
Section 4123.59, Revised Code (Recodification Act of 1953), provided as follows:
“In case an injury to an employee causes death within a period of two years, and in cases in which compensation or disability on account of the injury has been continuous to the time of the death of the injured employee and the death is the result of such original injury, benefits shall be in the amount and to the persons following * #
It will be noted that there is no provision in the foregoing section for the payment of death benefits as to an injury which merely accelerates a death from a pre-existing cause, but in the case of Weaver v. Industrial Commission, 125 Ohio St., 465, 181 N. E., 894. this court stated as follows:
“Under this provision the plaintiff in an appeal case from a denial of award by the Industrial Commission for death of a workman or employee has to establish that the injury was the proximate cause of the death, or was the proximate cause of the acceleration of death.”
The decision in the Weaver case was based upon two Illinois cases.
*81 In the case of Springfield District Coal Mining Co. v. Industrial Commission, 303 Ill., 455, 135 N. E., 789, it was held as follows:
“If death is fairly chargeable to an accident suffered in the course of the employment as an efficient cause compensation may be awarded, and the previous physical condition of the employee does not affect the right. So long as the injury sustained is the proximate cause of the incapacity or death, compensation is to be allowed although there was a pre-existing disease, if the disease was aggravated or accelerated by the accidental injury * *
In West Side Coal & Mining Co. v. Industrial Commission, 321 Ill., 61, 151 N. E., 593, the evidence showed that the deceased had an unhealed sore on his lip for some time before he suffered a burn on the lip, which his dependents claimed caused the cancerous condition from which he died. The sore developed into a cancer. It was held that there was insufficient evidence that the burn was an accelerating and proximate cause of death. In the opinion it is said:
“It was incumbent on * * * [claimants] to show by preponderance of the evidence either that the burn on deceased’s lip directly caused the cancer that caused his death or that it accelerated his death and was a proximate cause of his death.”
Since the Weaver case, the courts of Ohio have assumed the rule to be that where an injury is the proximate cause of the acceleration of death there may be compensation just as where the injury directly causes the death itself.
In the case of State, ex rel. Republic Rubber Division, Lee Tire & Rubber Corp., v. Morse et al., Industnal Commission, 157 Ohio St., 288, 105 N. E. (2d), 251, this court held that the compensation for an accelerated death should be the full amount allowable for a death directly caused by an accident.
This court, in Larrissey v. Norwalk Truck Lines, Inc., 155 Ohio St., 207, 98 N. E. (2d), 419, held that, under the wrongful-death statute (Section 2125.01, Revised Code), an action may properly be based on an injury accelerating a person’s death from a pre-existing cause: that in such an action the plaintiff has the burden of proving that the tortious act was the proximate cause of the acceleration of death; and that, in mitigation of damages, the defendant may offer evidence, as to the weak *82 ness, diseased condition, impaired earning power, or lack of activity of the decedent, or other facts tending to prove that he would have lived only a very short time had his death not been accelerated by the tortious act.
The difference between wrongful-death cases and workmen’s compensation cases is obvious. In the former, the jury determines the amount of damages to be awarded. In the latter, the jury merely determines the right to participate in the fund and the claimant then receives the full death award. Wrongful-death cases are based on the wrongful act, neglect or default of the defendant, whereas workmen’s compensation cases are based solely upon an accidental injury sustained in the course of and arising out of the workman’s employment.
In the present case, as we have shown from an analysis of the testimony of plaintiff’s expert witness, his answer left only a speculation or guess as to any acceleration of McKee’s death by the accident he sustained, in spite of the witness’s words to the effect that his opinion was that there was a direct and causal connection between the accident and the acceleration of the death.
If we are to continue to hold, despite no provision therefor in the statute, that a death from a pre-existing cause and accelerated by an accidental injury is compensable as a death claim under the statute, there must be a substantial causal relationship between the accident and the accelerated death, and such relationship can not be proved by mere magic words of direct causation without evidence to definitely support it.
After our decision in the Larrissey case, we decided the case of Lopresti v. Community Traction Co., 160 Ohio St., 480, 117 N. E. (2d), 2, and held as follows in the second paragraph of the syllabus:
“In a wrongful death action, where it is claimed that the death was accelerated by the wrongful act of the defendant, recovery can be had only where it is shown by the evidence that death was accelerated by an appreciable period of time as a direct result of the wrongful act.”
We are of the opinion that the same rule should apply with reference to the acceleration of death under the Workmen’s Compensation Act, and that there can be no recovery without *83 an acceleration by an appreciable and substantial period of time.
A careful perusal of the testimony of plaintiff’s expert witness, which is the basis for the claim in the present case, demonstrates beyond the peradventure of a doubt that such witness could not and did not give any evidence as to a substantial traumatic acceleration of the death of Charles McKee.
It follows that the trial court was in error in refusing to direct the jury to return a verdict for the defendant, and that the Court of Appeals erred in affirming the judgment of the trial court. )
The judgment of the Court of Appeals is reversed, and final judgment is rendered for defendant.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taft, Matthias, Bell and Herbert, JJ., concur.