(No. 17251.—Judgment reversed and award confirmed.)
CHARLES E. REED & Co., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BERTHA SCHULTZ, Plaintiff in Error.)

*Opinion filed December 21, 1927.*

1. WORKMEN'S COMPENSATION—*fact that injury arose out of employment may be established by circumstantial evidence.* While the burden rests upon the claimant for compensation for the death of an employee to show by competent testimony an accidental injury to the employee resulting in death and that the injury occurred in connection with the employment, such facts need not be established by eye-witnesses but may be shown by circumstantial evidence showing the greater probability that the injury was accidental and arose out of and in the course of the employment.

2. SAME—*when injury to night watchman is shown to have occurred in course of employment.* In a proceeding for compensation for the death of an employee, the fact that the injury resulting in death arose out of and in the course of the employment may be established by testimony of the wife of the deceased employee and of his fellow-workman that he was in good health and walked

without limping the day before the alleged injury and that on the following morning after leaving his night's work he limped noticeably and had a bruise and abrasion of the skin on his shin, and by other evidence showing that the bruised place became infected and resulted in his death.

3. SAME—*conversation with deceased employee as to cause of injury is not admissible.* Conversation with an injured employee as to the cause of his injury, which finally resulted in death and for which compensation is sought, is not admissible where there is no evidence showing that the conversation was a part of the *res gestæ,* but the error in admitting testimony as to such conversation will be regarded as harmless where there is sufficient competent evidence before the arbitrator and the Industrial Commission to justify the award.

4. EVIDENCE—*what determines whether evidence is admissible as res gestæ.* The test of admissibility of evidence as a part of the *res gestæ* is whether the act, declaration or exclamation is so intimately interwoven or connected with the principal fact or event which it characterizes as to be regarded as part of the transaction itself, and also whether it clearly negatives any premeditation or purpose to manufacture testimony.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

RALPH R. OBENCHAIN, and HENRY POLLENZ, for plaintiff in error.

GARRETT, McKENNA & HARRIS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Bertha Schultz, as widow of Herman Schultz, deceased, filed an application with the Industrial Commission for compensation for the death of her husband, alleged to have been caused by an accidental injury to his right leg, arising out of and during the course of his employment as night watchman for the defendant in error, Charles E. Reed & Co., which was engaged in manufacturing shoe machinery at its factory, located at 3227 Carroll avenue, in the city of Chicago. On the hearings before the arbitrator and the Industrial Commission it was

stipulated that both Schultz and defendant in error were before and at the time of the accidental injury subject to the provisions of the Workmen's Compensation act, and the only controverted questions were whether or not the injury from which Schultz died arose out of and in the course of his employment, and whether defendant in error had knowledge or notice of the accidental injury within thirty days after it occurred. The arbitrator found in favor of plaintiff in error and awarded her the sum of $3750 as compensation, to be paid in weekly payments of $12.50 for a period of 300 weeks, and further found that $137.50 of the award had accrued at the time the award was made. The Industrial Commission, on the hearing before it, approved and adopted the award as its award, which was later set aside in *certiorari* proceedings in the superior court of Cook county. A writ of error was allowed by this court to Bertha Schultz for a review of the record.

The undisputed facts in the record are, that plaintiff in error had been married to Herman Schultz and had been living with him as his wife for about forty-two years, up to December 4, 1922, the day he died of the injury aforesaid. He received the injury some time between the 8th and 15th day of November, 1922, the exact date not being fixed by the testimony. The injury received by him was on his right shin, about half the distance between his ankle and his knee, and the wound was about an inch and a half long, just over the shin bone, and about one inch wide. The first person, except the deceased, to see this wound, so far as the record discloses, was John Frech, who was also an employee at Reed & Co.'s factory. He saw the wound at the factory about six o'clock on the morning of the day, or the day after, the injury was received by Schultz, and at that hour Frech had gone to the factory to relieve Schultz of the duties he was performing for his employer. Schultz had worked at the factory as night watchman for about two years prior to his death and worked seven days a week

and twelve hours each day he worked, beginning at six o'clock in the evening and ending at six o'clock next morning. His duties were to take care of the boiler and keep up steam over night, clean up the factory and sweep the office, and one of his duties was to carry papers from the office to the boiler room. He was about seventy-four years old and was in good health before the accident. Frech had worked at the factory for five years or more, and while Schultz worked there performed the same character of duties as day watchman that Schultz performed as night watchman and worked seven days per week of twelve hours each, his day's work beginning at six o'clock every morning and ending at six o'clock in the evening. It was also his duty to take orders from the superintendent of the factory for Schultz and to tell Schultz about the orders when he came to the factory to work. He therefore saw Schultz every day at the hours they met and relieved each other in the performance of their duties. He further testified that on the morning he saw Schultz's wound he noticed that Schultz was not looking good and had a different appearance and an unusual expression on his face, and that he was somewhat helpless and had let the steam in the boiler run down and the boiler room become cold. Schultz was then sitting on a chair in the boiler room, and when he got up from the chair Frech noticed at once that he limped, and it was at that time that Frech looked at the wound. He also testified that Schultz's shin looked like it had been "scraped," and that "the skin was broken;" that the wound was red and looked like a fresh bruise. He helped Schultz to put on his overcoat and saw him leave the plant, walking lame as he went out of the door. He then stated that Schultz was not limping on the day before the morning that he examined his wound, and that he had always noticed him walk when he would meet him.

Plaintiff in error and her daughter, Meta Motzny, both of whom live at 2451 North Springfield avenue, in Chicago,

testified to other facts that were legitimate and competent evidence in the case, to the effect that on the same morning that Frech examined the wound of Schultz at the factory Schultz went home and showed his wife the wound on his leg. They described the wound as being located on his shin at the point heretofore stated and as of about the size stated; that it was then red; that the skin around the wound was broken; that blood was oozing from it and that his underwear at the point where it came in contact with the wound was wet with fresh blood. They stated that it was a "scratch" or a scrape on the shin and that it had the appearance of being bruised. They had Dr. Larsen on that same day call and see the wound, and apparently under the doctor's instructions they cared for the leg themselves by repeatedly putting hot towels on it. Schultz also bathed himself with hot water, and on the next day he seemed to feel good and expressed himself that he would get along all right. On November 24, 1922, he had to take to his bed on account of the wound having become infected. In addition to Dr. Larsen Dr. Venn was also called and treated him. His condition continued, however, to grow worse at an alarming rate up to the time he died. The mother and daughter described the wound during this latter period as presenting a reddish and bluish appearance; that the skin was broken open "to the bone," and Mrs. Motzny described it as at one time being black and blue. The evidence of these two witnesses is also to the effect that the deceased was in fine health before his injury. Mrs Schultz further testified that when her husband came home on that morning he walked lame, and that she remembered when he left the night before he walked all right and was not lame; that she saw his leg the night before and that there was no bruise upon it; that he worked for a week after the accident and was not sick during that time; that it was on a Friday morning he came home sick from the wound and continued in bed until his death, on

Monday, December 4, 1922. The foregoing facts testified to by these witnesses are not disputed by any. evidence in the record, except that the undisputed evidence in the record is to the effect that the deceased worked every day after his injury up to November 24, 1922, but no witness knew the exact number of days he worked after the injury because of the fact that no one could remember the exact day of the injury.

The testimony of the medical experts, Drs. Venn and Goltra, is to the effect that the body of the deceased had become infected through the wound and that he had died of septicemia. Dr. Venn testified that he saw Schultz on the day before he died and made an examination of him. He found that he was in a profound state of septicemia, having a dry, glazed tongue, a typhoidal condition, with a temperature of 102; that his right leg was affected and swollen from the knee to the ankle; that his foot was swollen; that his leg was gangrenous and pus was oozing from it in a number of places. Basing his opinion upon his examination and upon a hypothetical question based on the facts testified to by the witnesses for plaintiff in error, he gave it as his judgment that septicemia, due to the injury, .was the cause of his death.

The undisputed testimony of Herman A. Schultz, Jr., the superintendent of Reed & Co., is to the effect that there was a report made to him of the injury to Schultz by the day watchman, Frech, on the day Schultz quit his employment after he was injured, and that he made a report to Reed of what had been reported to him, three or four days before the death of Schultz. It is an undisputed fact that plaintiff in error was the only person that was dependent upon him for support at the time of his death.

The testimony of plaintiff in error and her daughter establishes the fact that on the evening before the morning that Frech examined the wound the deceased was not limping and had no wound on his leg when he started to the

factory to perform his duties as night watchman for that night, and that early the next morning he came home limping and was injured on his leg, as heretofore stated. The testimony of Frech also establishes the fact that he was not limping and was in good condition when he arrived at the factory on that evening and that he was injured between six o'clock of that evening and six o'clock the next morning. It is therefore clearly proved, circumstantially, that Schultz was injured that night during the time he was required to be performing his duties as night watchman. The injury was of such character that it might be reasonably expected to happen to him while in the performance of his duties as night watchman by striking his shin against some object while going to and from the various parts of the factory in the discharge of his night duties. It would be drawing rather an unusual and unnatural conclusion to hold that it was just as natural and reasonable that Schultz intentionally inflicted the injury on himself, or that he left the factory and his employment and received the injury while out of the factory and when not engaged at his employment, as to hold that the proof shows that his injury was accidental and arose out of and in the course of his employment. In cases of the character now before us we have frequently held that the burden rests upon the claimant to show by competent testimony an accidental injury to the employee resulting in his death and that the injury occurred in connection with his employment, and that such facts need not be established by eye-witnesses but may be shown by circumstantial evidence and the greater probability that the injury was accidental and arose out of and in the course of the employment. (*Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96; *Vulcan Detinning Co.* v. *Industrial Com.* 295 id. 141; *Hydrox Chemical Co.* v. *Industrial Com.* 291 id. 579.) The *Hydrox Chemical Co. case* is on all-fours with the case now before us, and in accord with the holding in that case and

the other cases cited we hold that the proof in this case shows by facts and circumstances proved that Schultz received an accidental injury that arose out of and in the course of his employment.

Frech was permitted to testify, over the objections of defendant in error, that on the morning he found Schultz sitting in the boiler room, injured, he asked him what ailed him; that Schultz replied that while carrying a basket of paper to the boiler room that night he bumped his shin against a piece of steel that was sticking out of some part of the machinery, and that Schultz went with him up-stairs and showed him the place where he was injured and the bar of steel against which he bumped his shin. The daughter of Schultz, Mrs. Motzny, was permitted, over the objection of defendant in error, to testify that Schultz practically stated the same thing to her, and that she notified the superintendent of defendant in error to that effect and told him that her father had to take to his bed on account of the injury and was not able to work at the factory. There is no evidence in the record that shows these conversations with the deceased were admissible as a part of the *res gestæ*, and for that reason they were not admissible for the purpose of proving that the injury arose out of and in the course of the employment. The statements were competent for the purpose of showing knowledge or notice of the accident to the employer, in so far as they were reported to the superintendent of the defendant by Frech and Mrs. Motzny. The test of the admissibility of evidence as a part of the *res gestæ* is whether the act, declaration or exclamation is so intimately interwoven or connected with the principal fact or event which it characterizes as to be regarded as a part of the transaction itself, and also whether it clearly negatives any premeditation or purpose to manufacture testimony. (*Cooke Co.* v. *Miller Brewing Co.* 316 Ill. 46.) This evidence was before the arbitrator and the commission, and as there is sufficient evi-

dence in the record that was competent and material to establish a liability in this case, the error was harmless.

It was error in the superior court to set aside the award. The judgment is therefore reversed and the award is confirmed.

*Judgment reversed and award confirmed.*