(No. 19591.—

Lou GREEN, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE SPRINGFIELD PAVING BRICK COMPANY, Defendant in Error.)

*Opinion filed December 20, 1929.*

JOHNSON & PEFFERLE, and CLARENCE B. DAVIS, for plaintiff in error.

EARL S. HODGES, and HERBERT N. TRAGETHON, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Sangamon county confirmed an order of the Industrial Commission refusing an award of compensation to the widow of Robert Green for his death, which was alleged to have resulted from an accidental injury arising out of and in the course of his employment by the Springfield Paving Brick Company. On the petition of the widow a writ of error was awarded, and the record has been certified as a return to the writ.

On the date of his injury, February 21, 1927, Green was seventy-one years old and had been in the employ of the defendant in error thirty-two years. He was a negro, five feet ten inches tall, weighing about two hundred pounds, and was in apparent good health, having never been sick and had worked regularly. While engaged in his work a chain which was being used to draw cars broke and was thrown against him, causing a compound comminuted fracture of the left femur, just above the knee. The bone came through the skin. Medical, surgical and hospital care was furnished, and compensation was paid by the employer from the date of the injury until Green's death, which occurred on August 29, 1927. The only controversy in the case is whether

his death was the result of the injury. The arbitrator made an award in favor of his widow, but upon a review of the case the commission decided that Green's death was not due to the injury and that she was not entitled to compensation.

On the hearing before the arbitrator, Dr. MacNamara, who was Green's attending physician from the time of his injury until his death, Dr. Beverly, Dr. Henkel and Dr. Bain testified. Before the commission Drs. Patton, Deal and Walsh also testified. When Green was injured Dr. MacNamara, the company doctor, was called and caused him to be taken to St. John's Hospital. The external wound was treated for about a week before the fracture was reduced. The union of the bones took place, an extension being put on the leg the latter part of February and removed in April. On May 6 he was given an electric treatment. On May 10 he was around on crutches and went home on May 30. The doctor called on him from time to time, finding him able to walk around the house with the aid of his crutch until the middle of July. He used a cane then, and on July 29 he was again received at the hospital suffering from carcinoma of the prostate gland. The hospital record shows carcinoma of prostate, complications, myocarditis, nephritis and compound comminuted fracture of the left femur. On February 22, 1927, an examination at the hospital showed there were hyaline casts in the urine, which showed that he had nephritis, and there was some swelling of the lower extremities. When he went back to the hospital on July 31 he was unable to pass his urine and a catheter was used. His decline from that time was rapid. When he died his weight was 110 pounds. A post-mortem examination was made by Dr. Bain with the consent of the widow, in the presence of Dr. MacNamara. It disclosed, as Dr. Bain testified, "marked arteriosclerosis with coronary sclerosis, aortitis, and then some degenerative processes going on in the liver, as indicated by the chronic passive hyperemia of the liver. He had chronic interstitial nephritis. He had cysts

in both kidneys, cystic formations in both kidneys and a carcinoma of the prostate. These conditions contributed to the degeneration of the heart muscles, which was the immediate cause of death." Three or four days after July 29 Dr. Henkel was called into consultation with Dr. MacNamara. Green was then suffering with acute prostatitis. The four doctors, MacNamara, Patton, Henkel and Deal, testified as experts that they could see no connection between the injury to the leg and the carcinoma of the prostate, which finally resulted in retention of urine and death. Dr. Beverly, while visiting another patient who was in the same room at the hospital as Green, saw him on February 22 and other days during his first confinement there. His general physical condition seemed to be good. Dr. Beverly was of the opinion that the confinement in bed because of the injury to his leg caused a degeneration of the heart, liver, lungs and prostate, permitting the conditions shown by the post-mortem to become aggravated. He testified: "The break itself directly did not cause the wasting and loss of vitality but it would do it indirectly; because the man was confined in bed and he was not able to get around the vitality forces were lowered and degeneration set in. A man whose vitality has degenerated permits the ravages of these other conditions to the end that they result in death. These other conditions were found in the autopsy. I attribute his death to the lowered vitality and the degenerative conditions that set in—the degenerative condition that set in during the confinement, while flat on his back in the hospital." Dr. Walsh stated: "The secondary cause arises from the fracture of the femur. The immediate cause was caused by the condition arising from the necessary confinement in bed as the result of treatment for the fracture of the femur. A man seventy-one years of age, suffering shock, placed in bed, a condition of inactivity starts a general deterioration. This man lying in bed would be unable to empty his bladder and would have residual urine—unemptied, unvoided

urine. The residual urine becomes infected urine, and these set up a cystitis."

The contention of the plaintiff in error is that Green, who was apparently in good physical condition before his injury, when compelled, as a result of the injury, to lie in bed, was unable to empty his bladder completely, and the residue set up an infection causing urinary sepsis, which, with general degenerative changes brought about by confinement to his bed as the result of the injury, caused his death. The physicians substantially agree that the acute retention resulted from a closure of the urethra by an enlargement of the prostate. Dr. MacNamara, the attending physician, saw no indication that urine was being retained during Green's first confinement in the hospital and was of the opinion that lying flat in bed would help the prostatic condition. Dr. Henkel's opinion was that the confinement would help the nephritis and myocarditis and have no effect on the prostatitis. Dr. Patton would not say what effect lying in bed would have on Green's general systemic condition. Dr. Deal was of the opinion that Green had had residual urine for months or a year or two before his acute retention; that the muscles of a man seventy-one years old, with a large prostate, gradually weaken, so that it would not be so easy for him to urinate lying down, but he did not think this would make any difference from a practical viewpoint. Dr. Beverly was of the opinion that because Green was confined to bed the degeneration and loss of vitality permitted the conditions described in the post-mortem to become aggravated, though the majority of the doctors thought that the confinement had no tendency to aggravate the condition which apparently existed at the time of his injury and eventually caused his death.

While a finding of the commission must be set aside if manifestly contrary to the weight of the evidence, (*Ayer & Lord Tie Co.* v. *Industrial Com.* 324 Ill. 504,) it will not be disturbed unless contrary to the manifest weight of the

evidence. (*Goodman Manf. Co.* v. *Industrial Com.* 316 Ill. 394.) Where the evidence is conflicting it is the province and duty of the Industrial Commission to consider and weigh it. Liability cannot be based upon a choice between two theories equally compatible with the evidence, one of which would show a liability and the other not. The facts showing the liability of an employer under the Workmen's Compensation act must be shown by a preponderance of the evidence. (*Cockrell* v. *Industrial Com.* 327 Ill. 438.) The burden of proof was on the plaintiff in error to show that the injury of the leg caused death.

In our judgment the Industrial Commission reached the proper conclusion on the evidence. The preponderance of the testimony of the physicians leads to the conclusion that the condition shown by the autopsy existed prior to the accident, and the lying quiet tended to alleviate, rather than aggravate, the condition. It is probable that the prostatitis had existed for a considerable time before the injury. Green made a good recovery from the injury, and within an ordinary time his broken bone united, he got out of bed and was around on crutches. No urinary trouble was manifest during his confinement. His leg was doing well, causing no serious trouble but making normal progress toward complete recovery for two months after his return from the hospital before the condition caused by the prostatitis became acute. In Dr. Patton's opinion the prostatitis would have come on even though the man had been working, and its happening during his recovery from his injury was a mere coincidence.

The finding of the Industrial Commission that Green's death did not result from the injury to his leg is justified by the evidence, and the judgment of the circuit court affirming that finding will be affirmed.

*Judgment affirmed.*