(No. 26942.—Judgment reversed; award confirmed.)
LAGOMARCINO-GRUPE CO. OF IOWA, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANNA A. ALT-HOFF *et al.*, Plaintiffs in Error.)

*Opinion filed March 16, 1943—Rehearing denied May 14, 1943.*

JOHN T. REARDON, and JOHN T. INGHRAM, for plaintiffs in error.

LANCASTER & NICHOLS, and WILLIAM A. DORSEY, (PAUL B. NICHOLS, of counsel,) for defendant in error.

Mr. JUSTICE GUNN delivered the opinion of the court:

Anna A. Althoff, widow of Gerry A. Althoff, filed an application on behalf of herself and minor children against the Quincy Fruit & Vegetable Growers Association and Lagomarcino-Grupe Co. for compensation because of the death of Gerry A. Althoff by an accident arising out of and in the course of his employment. The Quincy Fruit & Vegetable Growers Association will hereafter be referred to as the Association, and the Lagomarcino-Grupe Co. referred to as the Grupe Co.

Upon hearing the arbitrator found Althoff was the employee of the Grupe Co., and that he sustained injuries as such employee resulting in his death, and made an award for the benefit of the widow and minor children. He also found the relation of employer and employee did not exist between the deceased and the Association. Upon a petition for review to the Industrial Commission the award of the arbitrator was confirmed. Upon review the circuit court of Adams county reversed the Industrial Commission and found Gerry A. Althoff was not at the time of the accident an employee of the Grupe Co., and did not sustain an accident arising out of his employment. A writ of error to this court has been allowed.

The facts as disclosed by the evidence are as follows: The Quincy Fruit & Vegetable Growers Association is un-

incorporated, and consists of a group of farmers who produce fruit and vegetables for sale to commission men. Up to the year 1939 Althoff had been their employee, but the fruit and vegetables were sold by a commission man by the name of Tate. In 1939 the Grupe Co. made an arrangement with the Association to sell all of its produce upon a commission of five per cent for fruit and ten per cent for vegetables. As the members of the Association brought produce to the commission house it was necessary that some one satisfactory to it check the commissions due from the individual members, and it was agreed between the Association and the Grupe Co. that Althoff would be a satisfactory person, and that he would be paid by the Grupe Co. out of the commission which it was to receive for the sale of fruits and vegetables.

The business was transacted in the following manner· There was a building to which the produce was delivered and Althoff would issue to the individual growers receipts for what they brought in. The Grupe Co., through its other agents and servants, would market the goods, and at the close of each day one Welle, a servant of the Grupe Co., would produce a record of the different jobbers who purchased produce and compare this with the receipts which Althoff had issued. Invoices were then made out, indicating the number of crates of produce and the sale price, and delivered to this agent of the Grupe Co., and the latter would then deliver to Althoff a check payable to the Fruit Association and the invoices would be marked paid, and Althoff would give to the Grupe Co. a check for the commission. When the salary of Althoff was paid the Grupe Co. would make a check to the Association for $100, which Althoff endorsed and retained as his salary.

All of the directors of the Association testified they had nothing to do with Althoff's salary and did not know how

he was paid. The Association never paid more for services than the amount of the commission, and the Grupe Co., for its services, received the commission less the amount it paid as salary to Althoff. There is some evidence tending to show the Grupe Co. exercised the right of control over Althoff, and no evidence of any control exercised by the Association. The evidence also shows that after Althoff was injured the vice-president of the Grupe Co. told his bookkeeper to draw a check for $100 in payment of his salary, making it payable to the Association.

The facts with respect to the injury are substantially as follows: The warehouse to which the fruit and vegetables were delivered extended north and south. It was a building of one story with basement. A railroad switch ran by the north end. The building had three doors on the east side, and there was a platform which ran along the side and extended as far to the north as the last door. This was several feet from the north end of the building. The basement floor was level with the switch track, and was about twelve feet below the ground floor and platform. The ground upon which the building was located was about the same level as the main floor from the front of the building back to the north door on the east side, from which point it sloped abruptly down to the level of the track. Slightly to the east and part way down the grade was a place, near a tree growing on the hillside, which was used for the dumping of refuse material.

Althoff's place of business was in the building, and on July 13, 1939, he went to his work as usual in the morning. About the middle of the afternoon one of the employees in the building noticed his glasses were off and that he had a bruise on his forehead. Althoff stated he knew how it felt to be knocked out. This employee went down the hill and found the glasses near the tree on the hillside. Althoff was immediately taken home, and in addition to

the bruise on his head he complained of a pain in his jaw, his clothes were soiled, there was a tear in the right trouser leg near the knee; his glasses were broken, and there was a tear or break in one of his shoes. He was taken to the hospital and died four days later. The medical testimony also showed his right arm and leg were bruised, and after a *post mortem* the medical opinion was that Althoff had suffered a traumatic injury to his brain, which resulted in a hemorrhage and an intracranial pressure which caused his death.

The determination of facts in compensation cases is left to the Industrial Commission, and its finding will not be overturned by the court unless manifestly against the weight of the evidence. (*Rodriguez* v. *Industrial Com.* 371 Ill. 590; *Rosenfield* v. *Industrial Com.* 374 Ill. 176; *Green* v. *Industrial Com.* 337 Ill. 514.) We think there was ample testimony to sustain the finding of the commission that Althoff was an employee of the Grupe Co. This we believe is sufficiently manifested by the fact that the latter company reduced the commission it received by the amount of his salary, as well as the testimony of all of the directors of the Association that they not only did not hire him, but they did not know what his compensation was. Manifestly he was the employee of either the Association or the Grupe Co., and we are satisfied the finding of the Industrial Commission that Althoff was the employee of the Grupe Co. should not have been reversed by the circuit court.

The circuit court also found the deceased did not sustain an injury arising out of his employment. No one witnessed the accident. Althoff was on the premises of the respondent; it was during the course of his daily employment. It is conceded he sustained an accidental injury. What caused this injury is not shown, but whatever may have occasioned it was not a risk to which the public in general was subjected. It may not have been foreseen by

either Althoff or his employer, but if accidental injury did occur upon the premises while he was within the scope of his employment it would arise out of his employment. "The words 'arising out of' refer to the origin or cause of the accident and are descriptive of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident occurs. * * * An injury may be said to arise out of an employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the injury and a danger peculiar to the work, and it does not result from a hazard to which the employee would have been equally exposed apart from his employment. * * * This test excludes risks common to the neighborhood and the public, and not fairly traceable to the employment as a contributing, proximate cause." *City of Chicago* v. *Industrial Com.* 376 Ill. 207; *Rosenfield* v. *Industrial Com.* 374 Ill. 176.

The mere fact there are no eyewitnesses to an accident does not preclude the awarding of compensation. It is the province of the commission to examine all of the facts and circumstances, and to determine whether there was an accident, and whether it arose out of the employment. In *Reed & Co.* v. *Industrial Com.* 328 Ill. 345, we said: "In cases of the character now before us we have frequently held that the burden rests upon the claimant to show by competent testimony an accidental injury to the employee resulting in his death and that the injury occurred in connection with his employment, and that such facts need not be established by eye-witnesses but may be shown by circumstantial evidence, and the greater probability that the injury was accidental and arose out of and in the course of the employment." *Rosenfield* v. *Industrial Com.* 374 Ill. 176; *Chicago and West Towns Railways, Inc.* v. *Industrial Com.* 381 Ill. 257.

The position taken by respondent that there is no evidence to show the accident arose out of the employment in our opinion is not well founded. The deceased was where he had a right to be during the course of his employment. He was injured in some manner on or near the premises. While the theory seems to be that he fell off of the platform or down the hill in disposing of waste paper, yet there is nothing to substantiate this except the fact that his glasses were found near the tree on the hillside. Nevertheless it does appear that while in the course of his employment he suffered an accidental injury at a place where the risk was not common to the public, and it was therefore within the province of the Industrial Commission, taking into consideration all of the facts and circumstances, to determine that the injury was accidental and that it grew out of and in the course of his employment.

The case is close upon the facts, and as the General Assembly has delegated to the Industrial Commission the duty of determining whether an injury is compensable, its finding will not be overruled unless it is manifestly against the weight of the testimony. In this case there is no testimony that Althoff was injured elsewhere, but the respondents rest their case solely upon the absence of proof that the injury was accidental. We think the circuit court erred in overruling the award of the Industrial Commission.

The judgment of the circuit court of Adams county is reversed and the order of the Industrial Commission is confirmed.

*Judgment of circuit court reversed;*
*Order of Industrial Commission confirmed.*