(No. 13894.—Reversed and remanded.)

The St. Louis Smelting and Refining Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*— (Joe Benno, Defendant in Error.)

*Opinion filed June 22, 1921.*

1. Workmen's compensation—*claimant must prove that his condition is result of an industrial accident.*   An award under the Compensation act cannot rest upon speculation, conjecture or surmise, and the burden is on the claimant to prove that the condition for which he claims compensation is the result of an accident occurring in the course of and arising out of his employment.

2. Same—*claimant cannot express opinion as to per cent of loss of use of member.*   The opinion of the injured employee as to the per cent of loss of use of his leg because of the accident is incompetent as a basis for an award.

3. Same—*when evidence is not sufficient to sustain finding that injury was result of an industrial accident.*   Evidence that an employee of a lead smelting company was overcome with smoke and gas from the furnace and had to be taken home is not sufficient to sustain an award for permanent injury to the left leg because of sciatica with which the employee was suffering, where the only evidence as to whether the accident was a contributory cause of the sciatica was the testimony of one physician that lead poison-

ing might produce the symptoms described by the claimant, which he was inclined to doubt because the sciatica did not respond to treatment for lead poisoning, while other physicians testified that the employee's condition might have resulted from other infections, which were proved and not disputed, but not from lead poisoning.

Writ of Error to the Circuit Court of Madison county; the Hon. L. Bernreuter, Judge, presiding.

William E. Wheeler, (J. L. Simpson, and M. F. Oehmke, of counsel,) for plaintiff in error.

Kerr, MacDonald & Murphy, for defendant in error.

Mr. Justice Cartwright delivered the opinion of the court:

The plaintiff in error, the St. Louis Smelting and Refining Company, operated a lead smelting furnace in Madison county, and Joe Benno began work at the establishment on February 22, 1919, as a feeder, helper and charge-wheeler. On April 9, 1919, while tending a furnace he was affected by smoke and gas from the furnace and became dizzy and vomited. He laid down for a time and then walked home with some assistance from a fellow-workman. He had pain in his stomach and in the calf of his right leg and made application to the Industrial Commission for compensation, alleging that his physical condition resulted from an accident arising out of and in the course of his employment and that the injury to his leg was permanent. At the hearing before the arbitrator the disputed questions were whether there was an accident arising out of and in the course of the employment which produced the condition complained of, and if so, whether any injury to his leg was permanent.

Benno testified to the facts already stated, which were not disputed, and further, that when he went home he called for Dr. Harrison, the company doctor, who was

not at home, and then called for Dr. Armbruster, who attended and treated him until about the time that he went to St. Louis, on May 31; that Dr. Harrison came to see him seven or eight days after he became sick; that he went to the Barnes Hospital, in St. Louis, on October 2, 1919, and was treated in the hospital, and that his disability had continued and his leg and stomach bothered him all the time. He also offered the testimony of Dr. Eyerman, connected with the dispensary of the Barnes Hospital, who said that he examined Benno on June 9, 1919; that he came to the dispensary of the hospital and there was a bluish-black line at the gum margin and he gave him the usual treatment for the elimination of lead; that he then had sciatic neuritis, which could come from any local infection and could also come from lead; that he also had carious teeth, and the witness then rendered an opinion that he was suffering from lead poisoning; that he treated Benno until he went to the hospital on October 2, 1919, and there was not much improvement during the dispensary treatment. On cross-examination the doctor said that he was in the dispensary of the hospital connected with the Washington University but was not connected with the Barnes Hospital staff; that the improvement of Benno was not as rapid as it should have been and he might have been suffering from a focal infection, which is pus infection anywhere; that he was suffering from pyorrhea, which was sufficient to cause the condition of the sciatic nerve; that sciatica might be caused by pyorrhea or lead poisoning; that he did not think he had made the statement on direct examination that the sciatica was caused by plumbism, which is the term used by doctors for lead poisoning; that he did not remember making such a statement; that in his opinion the plumbism had a very minor role in the causation of Benno's disability; that lead poisoning might produce the symptoms described by Benno or might not, and the fact that the sciatica did not respond to the treat-

ment for plumbism impelled him to doubt that plumbism might be a contributing cause of the sciatica.

On the part of the company, Dr. Armbruster, who had no connection with the company, testified that he was called to treat Benno on April 9,—the day of the alleged accident; that he then complained of pain in the right leg and later erysipelas developed; that erysipelas is a germ disease, which had nothing to do with working around a lead smelter, and the erysipelas had nothing to do with the sciatica; that he examined Benno later and treated him, and that his condition could not have been caused, either wholly or in part, by any lead poisoning or the breathing of gas nor be attributed to lead.

Dr. Harrison, who had been surgeon for the company for fourteen years and owned and conducted a hospital, testified that he had made a special study of plumbism, or lead poisoning, and made regular examinations of the lead-smelters, as required by law; that his last examination of Benno was on April 7, 1919, two days before the event when Benno quit work; that he was then suffering from pyorrhea; that he had no blue line on the gum and was not suffering from plumbism; that the blue line is formed by deposits of lead in the dirt on a person's teeth, and if the teeth are kept clean the blue line, which is like dirt under the finger nails and purely local, does not form; that he heard Benno was sick and went to see him in a friendly way and not professionally, and found that he had erysipelas and a bad case of pyorrhea and was suffering from pain in his right leg, which the doctor thought was due to focal infection from pyorrhea; that he was not suffering, at any time when he examined him, either from plumbism or any of its effects, and that the pyorrhea was the cause of the sciatica.

Benno gave his opinion that he had lost the use of his right leg to the extent of about one-third, and on the evidence before him the arbitrator declined to make an award

on account of the leg but awarded $11.74 per week for a period of 28 weeks for temporary total incapacity, and found that on the date of the award $328.22 was due. Benno petitioned for a review by the Industrial Commission on the ground that the award was inadequate, and the company petitioned for a review on the ground that there was no claim for compensation under the statute. On the review the only evidence offered was the deposition of Dr. Redfern, of the Barnes Hospital, offered by the company, and he said that Benno was admitted to the hospital on October 2 and discharged October 18, 1919; that the witness examined him the day he was admitted and found neuritis and prostatitis, and he saw him three or four times a week and the diagnosis was afterward confirmed; that Benno had carious teeth, chronic tonsilitis and ethmoidal and sphenoidal sinuitis; that the sinuitis and pyorrhea were treated, and one tooth was removed because it was decayed and had pus at the roots of it; that in his opinion the sciatica was due to an infection from the teeth and prostate; that Benno while under his charge was not suffering from plumbism, or lead poisoning, or from the breathing of gases; that the sciatica was attributable to the condition of his teeth, tonsils and nose; that his condition, either as to the sinuitis, his throat, his prostatitis or his sciatica, was not due directly or indirectly to lead poisoning; that his mouth was very dirty and his teeth filthy; that they had not been cleaned for some time and the hospital people cleaned the gums and the teeth also, and the treatment prescribed was for the elimination of the germs.

The commission found that Benno had sustained an accidental injury arising out of and in the course of his employment; that he was totally incapacitated for a period of twenty-nine weeks, and as a further result sustained the loss of 33⅓ per cent of the use of his right leg. Based on these findings, the commission made an award of $11.74 per week for 28 weeks for temporary total incapacity, and

a further sum of $11.74 per week for a further period of 58⅓ weeks, to commence with the expiration of the payments for temporary total incapacity, as compensation for 33⅓ per cent loss of the use of his right leg. On writ of *certiorari* from the circuit court of Madison county the award of the Industrial Commission was confirmed and a writ of error was allowed by this court.

It was incumbent on Benno to prove that an accident occurred in the course of his employment and arose out of it and that his condition for which he claimed compensation was a result of the accident. (*Spring Valley Coal Co.* v. *Industrial Com.* 289 Ill. 315; *Perry County Coal Corp.* v. *Industrial Com.* 294 id. 117.) An award under the Compensation act cannot rest upon speculation, conjecture or surmise. (*Albaugh-Dover Co.* v. *Industrial Board,* 278 Ill. 179; *Peoria Railway Terminal Co.* v. *Industrial Board,* 279 id. 352; *Peterson & Co.* v. *Industrial Board,* 281 id. 326; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459.) There was no substantial evidence of any permanent loss of the use of the leg if it could be attributed to an accident, but the evidence was that the condition of the leg was improving and the arbitrator refused to make an allowance for the leg. The amount awarded by the commission was based solely on the opinion of Benno as to the per cent of loss, and his opinion was incompetent as a basis for an award. (*Hafer Washed Coal Co.* v. *Industrial Com.* 293 Ill. 425; *International Coal Co.* v. *Industrial Com.* 293 id. 524.) So far as appears Benno was not before the commission on review, and there is nothing to indicate that the commission examined the leg, if it could be said that the condition of the leg resulted from an accident of any kind, character or nature. The only evidence tending in any degree to establish the claim to any award for an injury was that of Dr. Eyerman, who said on direct examination that he rendered an opinion on June 9, when he examined Benno, that he was suffering from lead poi-

soning, and that he had carious teeth and right sciatic neuritis, but on cross-examination the doctor said he did not think he made that statement; that so far as he remembered he did not make the statement, and he did not see the idea of harping on the idea that he insinuated that sciatica was due to lead poisoning, and the fact that the sciatica did not respond to treatment for lead poisoning impelled him to doubt whether lead poisoning may have been a contributing cause of the sciatica, and that lead poisoning might produce the symptoms that Benno described and might not. Considering the entire testimony of Dr. Eyerman, there was nothing more than speculation or conjecture that the condition of Benno might have arisen from lead poisoning or from infection from conditions proved and not disputed.

There was no evidence sufficient to sustain the award, and therefore the judgment of the circuit court is reversed and the cause remanded.        *Reversed and remanded.*

---

(No. 13830.—Reversed and remanded.)
FRANK DRDA, Appellee, *vs.* JOSEPH C. DRDA *et al.*
Appellants.

*Opinion filed June 22, 1921.*