(No. 22055.—

J. CONREAUX, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HATTIE FIELDS *et al.* Defendants in Error.)

*Opinion filed December 22, 1933.*

A. A. ALEXANDER, L. A. ROBERTSON, and WHEELER, OEHMKE & DUNHAM, for plaintiff in error.

EDGAR P. HOLLY, for defendants in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

A writ of error was allowed on the petition of J. Conreaux to review a judgment of the circuit court of St. Clair county which confirmed the award of compensation for the death of W. S. Fields, entered by the Industrial Commission in favor of the widow and children of Fields and against the plaintiff in.error, his employer.

The sole issue in the case is whether or not the deceased died as a result of injuries sustained by him in the course of his employment.

The deceased lived in Granite City and was employed by the plaintiff in error in his business of a concrete contractor in East St. Louis. On the 31st day of December, 1929, the deceased was injured. On that day a machine called a "concrete mixer" was not working satisfactorily, having developed motor trouble. The deceased was spinning the crank for the purpose of starting the motor, and while so spinning the crank the handle flew off and struck him in the mouth, causing a cut on his upper lip, and also struck him in the region of the chest. There is evidence that at the time he was struck he staggered back from the machine and was dazed by the blow and that some of his teeth were loosened. He had only been employed for a few days at the time of the accident. Shortly after the accident he was taken to the office of Dr. Phillip M. Dale, at Granite City, where the physician examined and treated him at about 5:00 o'clock in the afternoon. Dr. Dale found a cut on the upper lip about one-half or three-fourths of an inch long, bleeding profusely. He took one stitch in the lip in order to close the wound. His examination also disclosed that a small chip had been broken out of one tooth. Fields at the time he was in the physician's office made no complaint of any injury other than the one to his lip. After he received the treatment by the physician he went to his home in Granite City.

The widow of the deceased was permitted to testify at the hearing, over the objection of the plaintiff in error, that when her husband came home he was sick and was able to eat but a little supper and to drink but a little coffee. He spent the evening at home, lying down most of the time. There was evidence of one of the sons that when his father arrived home on the evening of the day of the injury he was pale, sweating quite a bit and had convulsions all the time until he died. On cross-examination, however, he stated that by the use of the word "convulsions" he meant that his father was in misery. An-

other witness for the claimants used the word "convulsions" in describing the condition of the deceased. There was evidence that on January 1 the deceased had the appearance of a man who was suffering. So far as the record discloses, no physician saw the deceased on the first of January or the 31st of December after 5:00 o'clock P. M. In the morning of the second day of January the deceased, in company with a fellow-workman, went to the place where they were employed in East St. Louis. On the way to the place of employment the deceased made the statement, in substance, that he did not know whether he would be able to go down and finish his job or not— that he was feeling too badly. On arriving at his place of employment he worked about one and a half or two hours. At the end of that time he was excited, began to sweat, was very nervous, and about 10:30 or 11:00 o'clock was taken home. Soon after his arrival at his residence Dr. Dale was called and again examined and treated him. Dr. Dale found that he then had symptoms of thrombosis. Such symptoms were manifested by pains in the abdomen, shortness of breath, sweating and shock complications, with extreme depression of the circulatory system. Dr. Dale did not again see Fields while he was alive. He died about two o'clock in the afternoon of that day.

Three witnesses for the claimants testified that before the accident Fields appeared strong and healthy. At the time of his death he was about fifty-two or fifty-three years old. No medical testimony was offered on behalf of the claimants. On the evening of January 2, 1933, Dr. Hollis N. Allen performed an autopsy on the body of Fields in the presence of Dr. Dale and Dr. Binney. Dr. Binney did not testify at the hearing before the arbitrator or the Industrial Commission. Dr. Allen is a graduate of the school of medicine of St. Louis University and specializes in pathology. The body was examined externally and internally. The external examination showed

a cut on one of the lips about three-fourths of an inch long and fairly deep. The injury to the lip was clotted over and had started to granulate. There was a small bruise on the front of the left arm, over the biceps muscle. There were no other marks or bruises on the body. Dr. Dale graduated from Rush Medical College in 1912 and has been practicing continuously since then. He has done post-graduate work in diseases of the heart and blood vessels at Harvard University and has treated and diagnosed cases involving the heart and blood vessels almost daily. He testified that he found nothing on the left arm sufficient to cause a man's death, and that there was nothing in or on his body that showed any connection between the mark on the arm and the death of Fields; that the wound on the lip was not sufficient to cause death and there was no connection between that wound and Fields' death. Both physicians testified that Fields' death was caused by a thrombus in the left coronary artery of the heart. The doctors defined "thrombus" as a stationary clot, "embolus" as a circulatory clot, and "thrombosis" as the process of the formation of a clot.

The internal examination of the body of the deceased showed that his arteries were diseased, being hard and calcified and having lost their normal elasticity. This condition existed generally in the man's arteries and more particularly in the coronary arteries. This disease, arteriosclerosis, had caused weak spots in the arteries, in which calcium had been deposited in the form of plaques. A plaque is a calcified rock scale on the inside of the artery. The thrombus found by the physicians was about three-fourths of an inch long at the opening of the ventricular branch of the left coronary artery. It was a layered clot, that adhered to the back and side of the artery and not to the front. The physicians testified that from the position of the clot and its adherence to the artery it had been built up from the back—that it was not an embolus that

had lodged there and then built up; that it was more like an accretion than a plug—an accretion of clots one upon the other; that it was not an embolus, because the clot did not completely fill the vessel and did not press against it equally on all sides but was adherent to the one side only. The fact that it was adherent to one side indicated that it had formed at the place where it was found. The thrombosis indicated trouble with the arteries of the heart. There was some dissolution of the continuity of the lining of the vessels at the point which caused the clot formation denominated as a thrombus.

Dr. Dale testified that he did not find any evidence in his examination before or after the man's death indicating that the thrombosis that Fields had was the result of trauma; that if thrombosis had resulted from the injury the symptoms would have been manifested before the second of January, for the reason that thrombosis affecting the blood vessels of the heart produces very severe symptoms immediately, particularly in a situation where as large and as important a vessel was involved as in Fields' case; that the thrombosis was not in the chambers of the heart. The fact that the muscles were diseased or might have been disturbed by some sort of trauma had nothing to do with the death. The injury would have to be to the artery in order to produce thrombosis in the artery. If the man had died from thrombosis as a result of the injury received on December 31 death would have occurred within a few hours, in all probability.

Dr. Allen arrived at the same conclusion as Dr. Dale with reference to the thrombus. He testified that the thrombosis was caused by a plaque that was only partly loosened from the wall of the blood vessel; that a man with diseased arteries might have a thrombus any time, regardless of trauma or injury of any kind; that in the thrombus found in Fields' body the blood was congealed, with the base a little harder; that the hardest part of the

thrombus was six to twelve hours old; that it was of recent origin—much more recent than the injury; that even though the man had had an injury and two days later a thrombus such as the one found in the body of Fields was discovered, witness would not say that it had resulted from a trauma, for the reason that a thrombus of the size in question would certainly have killed him sooner; that a thrombus usually builds up within a very few hours; that an acute thrombus building up in that particular branch of the artery would have shut off that part of the heart and he would have died sooner than two or three days. Both physicians agreed, and testified in substance, that in their opinion the deceased had a thrombus rather than an embolus, because the clot did not completely fill the vessel and did not press against it equally on all sides but was adherent to the one side, which indicated that it had formed in the place in which it was found; that while an embolus may be traumatic and may take place in some one part of the body and continue its progress through the artery until it gets to a place which is too small for it to get through, that did not happen in Fields' case; that if it had, the thrombus would have plugged the artery completely; that it was not possible for the clot to form in the vessels of the lip, as they were not large enough; that there was nothing in the examination to indicate that there was an embolus; that if there had been an embolus of any size they would have found it; the fact that the deceased had a weak heart did not make any difference as regards the artery, and if he had received a blow on the chest it would have made no difference, as the effects would have been immediate. Both physicians stated positively that there was no causal relation between the accident that Fields suffered on December 31 and his death on January 2, and that his diseased condition was not aggravated by the injury.

It is earnestly contended on behalf of the plaintiff in error that the award made by the Industrial Commission is

against the manifest weight of the evidence. The burden of proof is on the claimant to prove by a preponderance of the evidence a causative connection of the accidental injury with the death. (*Rittler* v. *Industrial Com.* 351 Ill. 338; *Sanitary District* v. *Industrial Com.* 343 id. 236; *Freeman Coal Co.* v. *Industrial Com.* 315 id. 84; *Standard Oil Co.* v. *Industrial Com.* 339 id. 252; *Berry* v. *Industrial Com.* 335 id. 374; *Sears, Roebuck & Co.* v. *Industrial Com.* 334 id. 246.) It is the province of the Industrial Commission to decide the case upon the evidence and all reasonable inferences that can be drawn therefrom, but in drawing inferences from the evidence, where there is no positive proof that the death or injury of the employee was occasioned as a result of an accident suffered during the course of his employment, the inferences must be reasonable—such as can legitimately and properly be drawn from the proven facts. The term "inferences," as used in this connection, does not mean guesswork. There is no presumption in a case of this nature that the death was caused by reason of the accident. The liability of the defendant under the Compensation act cannot rest upon imagination, conjecture or surmise. (*Rittler* v. *Industrial Com. supra; Byram* v. *Industrial Com.* 333 Ill. 152; *Illinois Bell Telephone Co.* v. *Industrial Com.* 325 id. 102; *City of Rochelle* v. *Industrial Com.* 332 id. 386.) The liability of the defendant cannot be rested upon a choice between two views equally compatible with the evidence. (*Rittler* v. *Industrial Com. supra; Green* v. *Industrial Com.* 337 Ill. 514; *Ayer & Lord Tie Co.* v. *Industrial Com.* 324 id. 504.) There can be no award where the condition results or death ensues from a pre-existing disease and not from an injury. *St. Louis Smelting Co.* v. *Industrial Com.* 298 Ill. 272; *Rittler* v. *Industrial Com. supra.*

The rule in compensation cases is that this court is not warranted in setting aside the finding of the commission unless the award is shown to be clearly against the

manifest weight of the evidence, yet it is the duty of the court to weigh and consider the evidence in the record, and if it is found that the decision of the commission is without substantial foundation in the evidence the award must be set aside. *Berry* v. *Industrial Com. supra; Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Jolly* v. *Industrial Com.* 341 id. 46.

The burden was upon the claimants herein to show that the death for which they claimed compensation was the result of the accident. While the testimony offered in behalf of the claimants may, standing alone, have been sufficient to justify an award, yet it was the duty of the commission to weigh all the evidence in the record. The commission was not warranted in finding for the claimants merely because there was some testimony which, standing alone and undisputed, might warrant such finding, when there was in the record evidence of competent and qualified witnesses who, so far as this record discloses, were unbiased, and whose testimony was positive as to the cause of the death and that the death did not ensue as a result of an injury. There was no material contradiction in the medical testimony.

Tested by the above rules, we are of the opinion that the finding of the Industrial Commission and of the trial court was against the manifest weight of the evidence. The record in the case shows that all the evidence upon the issue as to what caused the death of the deceased has not been produced. In that situation this court has the power to reverse the judgment and to remand the cause for the taking of further evidence on the part of either or both of the parties. *Aycr & Lord Tie Co.* v. *Industrial Com. supra; Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136; *Chicago Daily News Co.* v. *Industrial Com.* 306 id. 212.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to set aside

the award of the Industrial Commission and to refer the claim of the plaintiffs to the Industrial Commission for further consideration upon the record and any further competent evidence that the parties may choose to present.

*Reversed and remanded, with directions.*