**Rose SMITH and Elmer Smith, Plaintiffs-Appellants,**

v.

**SEVEN–ELEVEN, INC., Defendant-Respondent.**

No. 8719.

Springfield Court of Appeals.

Missouri.

July 26, 1968.

Wear, Wear & Coffman, William A. Wear, Paul R. Coffman, Springfield, for plaintiffs-appellants.

Allen, Woolsey & Fisher, Harold J. Fisher, Alfred C. Sikes, Springfield, for defendant-respondent.

STONE, Judge.

As plaintiff Rose Smith (hereinafter sometimes referred to as plaintiff) was leaving one of defendant's markets in Springfield, Missouri, about 1 P.M. on Sunday, October 31, 1965, she fell and fractured her right ankle. In Count I of the petition filed in this action, she sought damages for her injury; and, in Count II of that petition, plaintiff Elmer Smith, her husband, sought damages for loss of her services and companionship and for medical and hospital expenses incident to her treatment. With defendant standing on its motion for directed verdict at the close of plaintiffs' evidence, the jury found for both plaintiffs and assessed plaintiff Rose's damages at $2,000 and plaintiff Elmer's damages at $500. But, in response to defendant's timely after-trial motion, the trial court set aside the judgment on both counts and entered judgment for defendant in accordance with its motion for a directed verdict [V.A.M.R. Rule 72.02] upon the stated ground that plaintiff Rose "failed to make a submissible case as to any negligence of the defendant being the proximate cause of plaintiff's fall and injuries sustained." Plaintiffs appeal.

The store, at which plaintiff fell, was situate on the northwest corner of South National Avenue and East Bennett Street, facing east toward National. Customers entered by traversing a small graveled area in front of the store and then ascending a flight of three steps. The photographic

exhibit shows the steps to have been of no more than ordinary height and quite broad in both width and depth—deep enough that, as plaintiff commented, "I . . . almost make two steps on each step." A continuous strip of rubber matting, of the same width as the entrance, extended from the entrance across the tread, over the edge, and down the riser of each step (in the fashion of a stairway runner) and for a distance of several feet over the graveled area at the foot of the steps. The matting was held in place by a horizontal strip fastened through the matting to the bottom of each riser. The only negligence pleaded in plaintiffs' petition and submitted in their verdict-directing instruction was that of defendant in allegedly "maintaining a rubber mat on said steps which was old and worn and in which there were holes, and which was loosely and not securely fastened to said steps."

■ Our appellate inquiry with respect to the sufficiency of the evidence to make a submissible case must be confined to that submitted assignment of negligence;[1] and in that inquiry we consider the evidence in the light most favorable to plaintiffs and accord to them the benefit of all supporting inferences fairly and reasonably deducible from the evidence, tempered only by the wise, judicious limitation that this rule calls for consideration of all, not merely an isolated part or parts, of the facts shown by plaintiffs and does not require or authorize the court to supply missing evidence, or to give plaintiffs the benefit of forced or unreasonable inferences, or to disregard the dictates of common reason and accept that which, on the whole record, obviously is not true.[2]

Plaintiff Rose, then 62 years of age and wearing "ordinary walking shoes" with a "military heel . . . [an] inch and a half or so" in height, had gone to defendant's store "to get pop and cigarettes" for her husband. As she entered the store, she noticed nothing unusual about the steps or entrance. In response to the first invitation on direct examination to "tell the jury what happened as you started to leave," plaintiff offered this narrative account: "Well, I paid for my purchase and came out, started down the steps and my heel caught on something and I fell and I sprained my left ankle and broke my right one." It was "the left heel" that "caught on something." The result was that "I fell to the right of the steps . . . . My back hit the lower step." When counsel pressed for more detailed information concerning the accident, the following answers were elicited: "Q. Do you know which step it was that your left ankle, foot and heel caught on? A. Well, I think it was the middle step here . . . . Q. And at the time this happened, did you know what caught your ankle? A. No, I didn't. Q. What did it feel like? A. Well, it just—something, my heel was caught in something and it didn't seem to want to let go." Plaintiffs'-appellants' counsel tuck into their statement of facts only the foregoing indefinite, inconclusive and incomplete information gleaned from the initial third of plaintiff Rose's direct examination, as recorded on six pages of her transcribed testimony. However, plaintiff's uncertain answers in that early direct examination were but an introduction to the testimonial state of compounded confusion which developed during the remaining two-thirds of her direct, and thereafter during her cross, redirect, recross and further redirect, examina-

1. Begley v. Connor, Mo., 361 S.W.2d 836, 839(4); Herr v. Ruprecht, Mo., 331 S. W.2d 642, 647(2); Evett v. Corbin, Mo., 305 S.W.2d 469, 471; Day v. Mayberry, Mo.App., 421 S.W.2d 34, 38(3); Weathers v. Falstaff Brewing Corp., Mo.App., 403 S.W.2d 663, 666(5).

2. Adler v. Laclede Gas Co., Mo., 414 S.W. 2d 304, 306(1); Kirks v. Waller, Mo., 341 S.W.2d 860, 863(2, 3); Atcheson v. Braniff International Airways, Mo., 327 S.W.2d 112, 117(7); Graham v. Conner, Mo.App., 412 S.W.2d 193, 198(3); Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 600 (1); Reames v. St. Louis-San Francisco R. Co., Mo.App., 359 S.W.2d 230, 235(2); Hunter v. Karchmer, Mo.App., 285 S.W. 2d 918, 928(2).

tion as preserved on more than forty additional pages.

Plaintiff had been interrogated by defendant's representatives on two occasions prior to trial, to wit, (1) in her hospital room on November 1, 1965, the day after her accident, when a question-and-answer statement was taken by one Todd, "a man from the insurance company," and (2) in her home on November 8, 1966, when her deposition was taken. As shown in the transcript on appeal, the *question-and-answer statement* taken by Todd included the following: "Q. You were on your way out of the store when this happened? A. Yes, I was going down the steps, I was on the last step and stepped to the ground and I must have stepped in a hole or something, a rock or something, that turned that ankle . . . . Q. It was your left ankle that turned with you first? A. Yes . . . . Q. So it happened when you actually stepped on the ground? A. Yes. Q. That is when it seemed to turn? A. Yes." And among the questions and answers in the *deposition* were these: "Q. . . . . [D]o I understand you, Mrs. Smith, you don't know whether your foot or shoe caught on something or if you stepped on something, a rock or hole or anything else that— A. No, I can't tell you what the object was or what did it. Your mind is not on things like that when you are hurting like I was hurting. . . . Q. You can't tell us you did fall or turn your ankle because of a hole? A. No, I can't; I have told you over and over, I can't tell you what made me fall or threw me, it happened there on their property and place and I can't tell you what. Q. Yes, maam, but whether it was you stepping in the hole— A. Or on the steps or what. Q. Or catching your foot or shoe on the steps or mat, you don't know, is that correct? . . . A. Yes. Q. You just don't know? A. No, I don't, I have said that all the time."

The following questions and answers in plaintiff's *testimony upon trial* are particularly interesting and perhaps significant: "Q. So do you know for a fact whether or not this [rubber] mat . . . had anything to do with your fall? A. Not till I noticed the picture [the photographic exhibit taken on December 9, 1965] and it showed that it could've happened that way . . . . Q. Well, it [plaintiff's narrative account to Todd] is a different story than you have told the jury here today, that your heel caught on something and caused you to fall from the steps. A. Well, it's just like I said, I must have stepped on something, a rock or something. It's just the same as if I caught my heel on the step. I don't know what made me fall. I said that all the time." And at the close of plaintiff's recross examination, we find this unrepudiated testimony confirming numerous statements to the same effect scattered throughout her testimony: "Q. You do not know whether, in fact, your heel caught on something and caused you to fall, or if, in fact, your ankle turned as you were stepping on the ground? . . . Is it a fact that you don't know which happened? A. Yes. Q. Or if either happened, all you know is that you fell, is that correct? A. That's right . . . . Q. You do not know whether it was your ankle turning away as you stepped to the ground, or your heel catching on the step, is that the honest truth? A. That's right, I do not know what made me fall."

In their brief, plaintiffs' counsel recognize the confused and inadequate state of plaintiff Rose's testimony: "True, there are elements of inconsistency in plaintiff's testimony respecting what she stated on direct and cross-examination and with what this plaintiff said in previous out-of-court statements by way of deposition and to the insurance company representative [Todd]. Standing alone, this witness' testimony might be considered to be insufficient upon which a jury should be allowed to find the fact of negligence upon the part of the defendant or a causal connection between such negligence and the injuries of which the plaintiff complains." But counsel hasten to assert that plaintiff's testi-

mony was "cleared up and explained by testimony offered by the only other witness, Raymond J. Marrs." Hence, to that we now attend.

Marrs was the "manager" of defendant's store, "a one-man operation"; but, since it was open for business sixteen hours each day, i. e., from 7 A.M. to 11 P.M., he was relieved "about three to five [each] afternoon" and did not work at all on Sundays. Accordingly, Marrs left the store between 3 and 5 P.M. on Saturday, October 30, 1965, and did not return until 7 A.M. on Monday, November 1. His testimony relied on by plaintiffs was that, soon after he opened the store on the latter date, he observed "an extra hole in the [rubber] mat" which had not been there prior to his weekend absence, and that he found a "triangular piece of rubber . . . layin'" on the gravel about a foot from the mat" which "fit perfectly" into the "extra hole." As shown in the photographic exhibit, the base of this triangular hole in the matting was on the edge of the middle step with the hole extending downward over the riser to the sharp apex of the triangle not quite midway between the treads of the middle and the bottom steps. The hole was a relatively small one but no dimensions were given for the hole, the triangular piece of matting, or the heel of plaintiff's shoe. There were several other holes in the matting, some of which were on the edge of the bottom step. Witness Marrs stated that "perhaps a couple of weeks" before plaintiff's accident he had mentioned "the worn condition of the mat" to defendant's president, who had said "he was going to put a new mat down." Within a month or so after the accident, Marrs was "fired" for reasons wholly unconnected therewith.

Plaintiffs' counsel depend upon the oft-cited general rule thus formulated in Adelsberger v. Sheehy, 332 Mo. 954, 961, 59 S.W. 2d 644, 647(6, 7): "Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted. On the other hand, [1] if, in such a case, the conflicting and contradictory statements of the witness are reasonably explained, *or* [2] if there are other facts and circumstances in the case tending to show which story of the witness is true, *and* from a fair consideration of all the facts and circumstances in evidence a jury could reasonably determine which statement of the witness should be accepted as true, then the credibility of the witness and the weight to be given to his testimony are questions for the jury." (All emphasis herein is ours.) See Bonastia v. Terminal Railroad Ass'n of St. Louis, Mo., 409 S.W.2d 122, 126.

█ Plaintiff Rose's testimony should not be treated as simply presenting two contradictory and conflicting versions as to the cause of her fall, for the plain and inescapable theme and thrust of her testimony, taken as a whole [cf. Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 682, and cases there cited], were her absolute and complete want of knowledge as to causation. But if it be assumed *arguendo* that the thin slice of her testimony tucked into plaintiffs' statement of facts (the distilled essence of which was that "my [left] heel caught on something and I fell") was one of two contradictory and conflicting versions within the contemplation of the rule in Adelsberger, supra, plaintiffs still could not recover on the record before us.

Plaintiff Rose made no pretense of satisfying the first alternative requirement in Adelsberger, supra (i. e., that "the conflicting and contradictory statements of the witness [be] reasonably explained") and repeatedly fell back upon her utter want of knowledge as to what had caused her fall. But, as we have noted, the contention of her counsel is that she made a submissible

case under the second alternative requirement (i. e., that "there are other facts and circumstances in the case tending to show which story of the witness is true") and the conjunctive requisite (i. e., that "from a fair consideration of all the facts and circumstances in evidence a jury could reasonably determine which statement of the witness should be accepted as true")— as counsel epitomize their position, plaintiff's testimony was "cleared up and explained" by Marrs' testimony.

The inference upon which plaintiffs necessarily depended as explaining and supporting plaintiff Rose's statement that "my [left] heel caught on something and I fell" was that the "extra hole" allegedly discovered by witness Marrs on the morning of Monday, November 1, had been created, and the triangular piece of matting then found "on the gravel about a foot from the mat" had been torn out, by the heel of plaintiff's left shoe about 1 P.M. on Sunday, October 31. Was that a permissible inference? We think not.

■ An inference is a deduction logically[3] and properly[4] drawn by reason[5] from proven or admitted facts. It is more than,[6] and cannot be predicated on,[7] mere surmise or conjecture, i. e., " 'the possibility that a thing could have happened. . . . an idea or a notion founded on the probability that a thing may have occurred . . . .' " Draper v. Louisville & Nashville R. Co., 348 Mo. 886, 893, 156 S.W.2d 626, 630; Louisville & Nashville R. Co. v. Mann's Adm'r., 227 Ky. 399, 13 S.W.2d 257, 258. An inference may not be forced,[8] and guesswork does not constitute an allowable substitute.[9]

Of course, it properly might have been found from Marrs' testimony that the triangular piece of matting had been torn out and the "extra hole" had come into being *sometime* after he had left defendant's market between 3 and 5 P.M. on Saturday, October 30, and before he had opened the market for business at 7 A.M. on Monday, November 1. But, during that period the market had been open to the public for six to eight hours on Saturday and sixteen hours on Sunday, or for a total of twenty-two to twenty-four hours, and unnumbered persons had entered and left the market over the same steps and matting. On the record before us, a finding that the heel of plaintiff Rose's shoe tore out the triangular piece of matting when she fell about 1 P.M. on Sunday, October 31, could not have been supported by an inference logically and properly drawn by reason from the proven facts, sparse and scant as they indeed were, but would have rested

3. Fannin v. Roe, 62 Wash.2d 239, 382 P. 2d 264, 266(4); Norfolk Coca-Cola Bottling Works v. Krausse, 162 Va. 107, 173 S.E. 497, 502; Commonwealth v. Whitman, 199 Pa.Super. 631, 186 A.2d 632, 633(1); Mechanics' & Traders' Ins. Co. v. Himmelstein, 24 Ohio App. 29, 155 N. E. 806, 809.

4. Allen v. Chicago, R. I. & P. Ry. Co., 227 Mo.App. 468, 479, 54 S.W.2d 787, 793 (3); Merkel v. Railway Mail Ass'n., 205 Mo.App. 484, 492, 226 S.W. 299, 301.

5. Pape v. Aetna Casualty & Surety Co., Mo.App., 150 S.W.2d 569, 572(2); Fink v. New York Central R. Co., 144 Ohio St. 1, 56 N.E.2d 456, 459(3); Atchison, T. & S. F. R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167, 171(8).

6. In re Woehr's Estate, 166 Cal.App.2d 4, 332 P.2d 818, 826; In re Estate of Braycovich, 153 Cal.App.2d 505, 314 P. 2d 767, 771(4).

7. Wilder v. W. T. Grant Co., 270 Minn. 259, 132 N.W.2d 852, 853(1); Sowers v. Marley, 235 N.C. 607, 70 S.E.2d 670, 672(2); Kitts v. Shoprite Foods, Inc., 64 N.M. 24, 323 P.2d 282, 284(9).

8. Davidson v. Hennegin, Mo., 304 S.W.2d 836, 839(3); Hogue v. Wurdack, Mo. App., 298 S.W.2d 492, 499(14); Krause v. Laverne Park Ass'n., Mo.App., 240 S.W.2d 724, 727(6); Sigmund v. Lowes, Mo.App., 236 S.W.2d 14, 18(16).

9. Gonzales v. Shoprite Foods, Inc., 69 N. M. 95, 364 P.2d 352, 354(5); Conreaux v. Industrial Com'n., 354 Ill. 456, 188 N. E. 457, 460; Wright v. Conway, 34 Wyo. 1, 241 P. 369, 242 P. 1107, 1110(5).

on nothing more than sheer surmise and *shimmering speculation.* Cf. Lenger v. Modern Recreations, Inc., Mo.App., 203 S.W.2d 100, 106. See Ward v. Temple Stephens Co., Mo., 418 S.W.2d 935, 939; Poe v. Safeway Stores, Inc., Mo.App., 409 S.W.2d 746(3); Willoughby v. Safeway Stores, Inc., Mo.App., 397 S.W.2d 748.

Furthermore, *even if* (contrary to our holding) any such inference could have been drawn, plaintiffs' recovery would have been barred by yet another obstacle. As we have seen, the only pleaded and submitted negligence was that of allegedly "maintaining a rubber mat on said steps which was old and worn and in which there were holes, and which was loosely and not securely fastened to said steps." The charge that the matting "was loosely and not securely fastened to said steps" fell of its own weight for want of any evidence to support it. Witness Marrs did testify that there were "quite a few holes" in the matting and that defendant's president was "familiar with the worn condition of the mat." But plaintiffs' theory of the case has been and is that plaintiff Rose fell as a result of the heel of her shoe tearing out the triangular piece of matting and thereby creating the "extra hole" allegedly discovered by Marrs on November 1, and *not* because the heel of her shoe caught in a *pre-existent* hole in the matting. Under that theory, the "extra hole" would have been an *effect*, not the *cause*, of her accident. And, *if* defendant was negligent in "maintaining a rubber mat on said steps which was old and worn and in which there were holes," there was no showing of causal connection between such negligence and plaintiff's fall.

"In the philosophy of the law of *actionable* negligence the proof of negligence itself is but one step toward recovery. An-

other step is to show by direct testimony, or by the proof of such facts as logically create the inference, that the negligence proved proximately caused or contributed to the injury. The one step, without the other, is idle, and might as well not be taken." Harper v. St. Louis Merchants' Bridge Term. Co., 187 Mo. (banc) 575, 586, 86 S.W. 99, 102; Waldmann v. Skrainka Const. Co., 211 Mo.App. 576, 587, 249 S.W. 698, 701. The burden of establishing their case, including the essential element of proximate causation, rested upon plaintiffs. Osterhaus v. Gladstone Hotel Corp., Mo., 344 S.W.2d 91, 94(4); Graham v. Conner, Mo.App., 412 S.W.2d 193, 204 (23); Prosser on Torts (2nd Ed.), § 44, 1. c. 222. But in the case at bar, as in Luettecke v. City of St. Louis, 346 Mo. 168, 179, 140 S.W.2d 45, 51, "[i]t is apparent from the testimony that the entire question of proximate cause is left in doubt, conjecture and uncertainty and that even [plaintiff Rose] herself does not know what caused her fall." With the element of proximate cause thus obscured in the nebulous twilight of speculation, conjecture and surmise, plaintiffs did not carry their burden and the learned trial judge properly set aside the judgment for them and entered judgment for defendant. Luettecke v. City of St. Louis, supra; Waldmann v. Skrainka Const. Co., supra; Bowerman v. Greenberg, 142 Neb. 721, 7 N.W.2d 711. See Baker v. City of Festus, Mo., 418 S.W.2d 957; James v. Sunshine Biscuits, Inc., Mo., 402 S.W.2d 364, 375(2); Osborn v. McBride, Mo., 400 S.W.2d 185, 188(3); Graham v. Conner, supra, 412 S.W.2d at 204(25); Schabbing v. Seabaugh, Mo.App., 395 S.W.2d 256, 259(7), 260(9).

The judgment for defendant is affirmed.

HOGAN, P. J., and TITUS, J., concur.